**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Luz Mary Patricia Valdes Acevedo,<br><br><div align="center">Petitioner,</div><br><div align="center">-v-</div><br>Nassau County Correctional Center,<br>United States Department of Homeland Security,<br>United States Department of Justice<br><br><div align="center">Respondents.</div> | <div align="center">2:26-cv-250<br>(NJC)</div> |

<div align="center"><strong>MEMORANDUM AND ORDER</strong></div>

NUSRAT J. CHOUDHURY, United States District Judge:

Petitioner Luz Mary Valdes Acevedo is a Colombian national who was paroled into the United States in 2009 and has been residing here ever since. She brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2242 ("Petition"), arguing that Immigration and Customs Enforcement ("ICE") has unlawfully detained her since January 15, 2026, when she was suddenly arrested at the close of an interview related to her application for lawful permanent residence status. The Petition names as Respondents the Nassau County Correctional Center ("Nassau County Jail"), the Department of Homeland Security ("DHS"), and the United States Department of Justice ("DOJ," collectively, "Respondents").

Before me is Respondents' Motion to Change Venue ("Motion"), which seeks to transfer this case to the Middle District of Pennsylvania. There is no dispute that following Ms. Valdes Acevedo's arrest in Long Island on the morning of January 15, 2026, she was detained in the Nassau County Jail, or that, after much effort, her family learned of her detention there and enlisted an attorney to file the Petition on her behalf that same day. Respondents nevertheless

argue that this Court is not the proper venue because, unbeknownst to her counsel and family, ICE booked Ms. Valdes Acevedo out of the Nassau County Jail at around 5:15 pm that same day and transported her to the Moshannon Valley Processing Center ("MVPC") in Pennsylvania, where she arrived at some time between 12:30 am and 1:05 am on January 16, 2026. Respondents take the position that the Petition must be heard in the federal judicial district in which Ms. Valdes Acevedo was located at 11:03 pm on January 15, 2026, when the Petition was filed—yet fail to provide evidence showing where Ms. Valdes Acevedo was actually located at that time. They nevertheless argue for transfer to the Middle District of Pennsylvania relying on hearsay statements and a 10:08 pm receipt from a gas station in Mifflinville, Pennsylvania, which they contend shows that Ms. Valdes Acevedo must have been located in that district at the precise moment counsel filed the Petition. According to Respondents, this result is compelled by the Second Circuit's decision in *Ozturk v. Hyde* ("*Ozturk II*"), 136 F.4th 382 (2d Cir. 2025).

The facts, however, do not support Respondents' theory of venue, and their strained reading of *Ozturk II* goes far beyond the Second Circuit's ruling in that case. As detailed below, by the time the Petition was filed—at 11:03 pm on the date of Ms. Valdes Acevedo's arrest—her family and counsel had made extensive efforts to find out where ICE was detaining her. ICE never provided any information about her whereabouts at any time, either through its Online Detainee Locator System or when her children went to the location of her arrest or called the phone number given to them. Rather, Ms. Valdes Acevedo called her daughter from the Nassau County Jail, and her daughter delivered needed medications for her there. An ICE supervisory officer at the jail told them that Ms. Valdes Acevedo might be moved out of the Nassau County Jail and, if so, would be permitted to inform her family. Fearing that they would not know where or when their mother would be taken to another location, her children searched the ICE Online

2

Detainee Locator System using Ms. Valdes Acevedo's name and Alien Registration Number ("A-Number") countless times, but each search yielded the result that there were no detainees associated with that information. Her children called every number possible, including a number given by the ICE supervisory officer, but the calls led to nowhere—the line was silent and then would beep. Nor was Ms. Valdes Acevedo ever permitted to tell her family that she was being moved out of Nassau County Jail, much less that she would be passing through New York City, New Jersey, and Pennsylvania en route to the MVPC. After the family secured counsel, counsel too checked the ICE Online Detainee Locator System, but that search also yielded no information about Ms. Valdes Acevedo. Lacking any reasonable basis to conclude that Ms. Valdes Acevedo was located in any other judicial district, Ms. Valdes Acevedo's counsel filed the Petition here, in the Eastern District of New York, at 11:03 pm. It was not until the early morning hours of January 16, 2026, after Ms. Valdes Acevedo arrived at the MVPC, that she was able to call her family to inform them of her location.

Normally, the judicial district where a habeas petitioner is confined at the time a habeas petition is filed is the sole judicial district in which the habeas petition may be heard—a requirement known as the "district-of-confinement" rule. This general rule controls venue for a habeas petition in the normal case, but there is an exception for extraordinary circumstances such as those presented here, where Respondents fail to show Ms. Valdes Acevedo's location at the time the Petition was filed and where her counsel (and family) had no way of knowing that ICE had moved her from the Eastern District of New York and may have been driving her through the Middle District of Pennsylvania when the Petition was filed. On these facts, Ms. Valdes Acevedo was held in an undisclosed location by an unknown custodian when the Petition was filed, making it impossible to determine the district of her confinement—the precise

3

circumstances recognized to warrant application of what is known as the "unknown-custodian exception" to the district-of-confinement rule. Applying this exception, Ms. Valdes Acevedo's district of confinement at the time the Petition was filed—and therefore the only judicial district in which the Petition can be heard—is the last known district where she was detained: the Eastern District of New York.

Contrary to Respondents' contentions, the Second Circuit's decision in *Ozturk II* does not compel the conclusion that habeas venue lies in the Middle District of Pennsylvania. In that case, the Second Circuit declined to impose an emergency stay of the reasoned decision of the District of Vermont requiring transfer of a habeas petitioner from Louisiana to Vermont. 136 F.4th at 390–404. In doing so, the Circuit did not resolve questions about how the district-of-confinement rule and unknown-custodian exception would apply in all situations. *Id*. Moreover, the Second Circuit's analysis did not green light a venue rule by which the district of confinement for a detained person being transported across judicial districts must be the district through which the government *may* be transporting the petitioner at the minute a habeas petition is filed—without any facts showing where the petitioner *actually was* at that time or that counsel had any reasonable basis to believe that the petitioner could be located in that district.

Accordingly, for the reasons explained below, Respondents' Motion is denied. The Eastern District of New York is the one and only judicial district in which Ms. Valdes Acevedo could have filed the Petition when she did and therefore is the proper venue.

## PROCEDURAL HISTORY

As noted, counsel filed the Petition on the night of January 15, 2026, seeking a writ of habeas corpus directing Respondents to release Ms. Valdes Acevedo from detention, among other relief. (ECF No. 1.) The next morning, on January 16, 2026, the Court ordered

4

Respondents to show cause as to why the Petition should not be granted by January 19, 2026, and ordered that Ms. Valdes Acevedo not be removed from the United States or from the Eastern District of New York, the Southern District of New York, or the District of New Jersey. (ECF No. 3.) Late on January 16, 2026, Ms. Valdes Acevedo's counsel filed a letter informing the Court that she had been transferred from Nassau County to Pennsylvania earlier that morning and arguing against any forthcoming request by Respondents to transfer venue. (ECF No. 7.)

The Court issued an Order requiring Respondents to file a letter addressing where Ms. Valdes Acevedo was detained by January 17, 2026. (Elec. Order, Jan. 16, 2026.) Respondents timely filed a letter reporting that Ms. Valdes Acevedo was detained in the MVPC in Pennsylvania and had been transferred from the Nassau County Jail prior to the issuance of the January 16, 2026 Order, which prohibited Respondents from transferring her anywhere outside of the Eastern or Southern Districts of New York and the District of New Jersey. (ECF No. 10 at 2.)

The following day, Respondents filed the Motion to Change Venue to the Middle District of Pennsylvania, arguing that Ms. Valdes Acevedo was located in that district at the time her Petition was filed. (Motion, ECF No. 13.) Along with the Motion, Respondents filed a declaration from ICE Supervisory Detention and Deportation Officer Kareem Johnson and a receipt from a gas station located in Miffinville, Pennsylvania. (("First Johnson Decl."), ECF No. 13-1; ECF No. 13-2.) Johnson's declaration consists of hearsay statements based not on personal knowledge, but on information gathered from unidentified sources and persons. (First Johnson Decl. ¶ 3 ("[T]he following representations are based on my review of Petitioner's administrative records, consultation with colleagues, ICE contractors, and ICE's electronic records and databases.").) According to Johnson and these unspecified sources and persons, ICE contractors

stopped for gas "in the vicinity of Mifflinville, Pennsylvania" at around 10:08 pm on January 15, 2026, while transporting Ms. Valdes Acevedo from the Nassau County Jail to the MVPC. (First Johnson Decl. ¶ 5; ECF No. 13-2.)

Ms. Valdes Acevedo opposed Respondents' Motion. (ECF No. 14.) On January 20, 2026, the Court scheduled a hearing on the Motion for January 21, 2026. (Elec. Order, Jan. 20, 2026.) The Court further ordered the following:

> Respondents must produce for testimony Kareem Johnson or any other ICE official with personal knowledge of who had custody of Ms. Acevedo on January 15, 2026 at 11:08 PM. (*See* Decl. of Kareem Johnson ("Johnson Decl."), ECF No. 13-1.) Johnson and other ICE officials who will testify may appear via videoconference. Respondents must also produce Petitioner, Ms. Acevedo, to appear via videoconference.
>
> In lieu of producing Mr. Johnson or another ICE official with the personal knowledge described above, Respondents may provide this Court with a filing identifying who would be the proper respondent to the petition under the immediate-custodian rule as of January 15, 2026 at 11:08 PM. *See Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025) ("Generally, [w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he must file the petition in the district of confinement and name his immediate custodian as the respondent.").

(*Id*.)[1]

On January 21, 2026, a few minutes prior to the hearing, Respondents filed an additional letter with the Court, "in lieu of producing Kareem Johnson or another [ICE] official" in response to the Court's Order. (("Jan. 21 Letter"), ECF No. 15.) Respondents take the position that Michael T. Rose, the Acting Field Office Director for ICE Enforcement and Removal Operations ("ERO") for Philadelphia, would be "the proper respondent to the petition under the immediate custodian rule." (*Id*.) Respondents also submitted a second declaration from Johnson,

---

[1] Although this Court's January 20, 2026 Order mistakenly referred to 11:08 pm as the time the Petition was filed, at the hearing, the Court and parties clarified that the correct time of filing was 11:03 pm, as shown on the Court's Electronic Filing System. (*See* ECF No. 1.)

in which he states that Rose is the Acting Field Office Director for ICE ERO for the Philadelphia ERO Field Office, which covers the entire state of Pennsylvania. (("Second Johnson Decl."), ECF No. 16.)

At the hearing, the Court heard argument from the parties and the following witnesses testified: Ms. Valdes Acevedo's daughter, Mary Stephany Cardona Valdes Acevedo ("Ms. Cardona Valdes"); Ms. Valdes Acevedo's son, Martin Alejandro Rios Valdes ("Mr. Rios Valdes"); Ms. Valdes Acevedo's other son, Juan Carlos Cardona Valdes ("Mr. Cardona Valdes"); and Ms. Valdes Acevedo herself, who joined through videoconference from the MVPC in Phillipsburg, Pennsylvania.

At the conclusion of the hearing, the Court permitted the parties to provide any supplemental briefing or evidentiary materials for the Court's consideration in resolving the Motion. On January 21, 2026, Ms. Valdes Acevedo filed a supplemental letter noting that she would have to secure new counsel if the Petition were transferred to the Middle District of Pennsylvania because her counsel is not a member of the Pennsylvania Bar. (ECF No. 17.) On January 22, 2026, Respondents filed a supplemental letter concerning ICE's policies on updating the location of ICE detainees on their Online Detainee Locator System and providing additional arguments for why the Middle District of Pennsylvania is the proper venue for this Petition. (("Jan. 22 Letter"), ECF No. 18.) Later that day, Ms. Valdes Acevedo filed a brief reply. (ECF No. 19.)

**FINDINGS OF FACT**

The following facts are taken from the parties' evidentiary submissions, admissions made by counsel during oral argument, and credible testimony from Ms. Valdes Acevedo, Ms. Cardona Valdes, Mr. Rios Valdes, and Mr. Cardona Valdes at the hearing.[2]

On the morning of January 15, 2026, Ms. Valdes Acevedo and her son, Mr. Rios Valdes, attended an interview with United States Citizenship and Immigration Services ("USCIS") at 30 Barretts Avenue, Holtsville, New York, in support of her application for status as a lawful permanent resident of the United States. (Pet. ¶¶ 23–25; First Johnson Decl. ¶ 4; Jan. 21 Hr'g Tr. ("Hr'g Tr.") 32:5–6.) At the end of the interview, ICE officers entered the room, presented an I-205 Warrant of Removal, and arrested Ms. Valdes Acevedo. (Pet. ¶¶ 7, 25; First Johnson Decl. ¶ 4; Hr'g Tr. 32:9–14). No one told Mr. Rios Valdes where ICE officers were taking his mother, even though he asked for this information during and after her arrest. (Hr'g Tr. 32:24–33:5.) After ICE officers took Ms. Valdes Acevedo away, Mr. Rios Valdes stayed at the location and asked "30 or more times" where she was taken, but the officers ordered him to leave the building without providing any additional information. (*Id*. at 33:1–5.) He called his sister, Ms. Cardona Valdes, to tell her that their mother had been arrested. (*Id*. at 14:3–5.) Unbeknownst to Mr. Rios Valdes at the time, ICE transported Ms. Valdes Acevedo to the Nassau County Jail in East Meadow, New York, where she was detained. (First Johnson Decl. ¶ 4.)

---

[2] Although Respondents reserve the right to challenge the credibility of the witnesses who testified at some future time (*see* Jan. 22 Letter at 2), the Court's factual findings are based on testimony that is credible in light of witnesses' responses to questions and demeanor in Court. Respondents were given ample opportunity to cross-examine all witnesses and elected to ask only a handful of questions, none of which call into question the testimony that this Court finds credible.

At around 9:50 am, Ms. Cardona Valdes met her brother at the USCIS building and went inside to ask about her mother's whereabouts, but unnamed officials said that they could not share any information. (Hr'g Tr. 14:3–20.) Ms. Cardona Valdes waited outside of the USCIS building for around one and a half hours before a federal vehicle arrived and "an older man with glasses" exited the vehicle and told her she was not supposed to be standing there. (*Id*. at 15:6–10.) Ms. Cardona Valdes told him that her mother was detained in the building. (*Id*. at 15:10–12.) The man went inside the building to inquire and returned outside to tell Ms. Cardona Valdes that her mother had been transferred elsewhere and was no longer inside the USCIS building. (*Id*. at 15:13–20.)

Sometime between 10:30 am and 11:00 am, Ms. Cardona Valdes received a call from her mother. (*Id*. at 15:22–24.) Mr. Rios Valdes was with her during the call and could hear the conversation. (*Id*. at 33:10–17.) An unnamed ICE supervisory officer was present with Ms. Valdes Acevedo in the Nassau County Jail while she spoke with her daughter on speakerphone. (Hr'g Tr. at 16:15–18.) They discussed how Ms. Cardona Valdes could get needed medications to her mother. (*Id*. at 17:6–17.) The officer informed Ms. Cardona Valdes that she could bring the medicine to 100 Carman Avenue in East Meadow, New York—the address for the Nassau County Jail. (*Id*. 17:14–15.) This call was the first time any family member learned that Ms. Valdes Acevedo was detained in the Nassau County Jail. (*Id*. at 17:14–15; *id.* at 33:10–13.) During the call, the officer also informed Ms. Cardona Valdes and Mr. Rios Valdes that they could find their mother's detention location by using ICE's Online Detainee Locator System. (*Id*. 33:10–17)

At around 12:00 pm, Ms. Cardona Valdes went to the Nassau County Jail and dropped off her mother's cholesterol medication. (Hr'g Tr. 17:16–19:13.) An officer supervising Ms.

Valdes Acevedo called Ms. Cardona Valdes to inform her that she could return to drop off her mother's diabetes medication as well, and Ms. Cardona Valdes did so at around 3:50 pm. (*Id*. 19:20–20:2, 20:11–22.) The officer who took the medication told her that Ms. Valdes Acevedo might be moved to 26 Federal Plaza, New York, New York sometime that day. (*Id*. 24:8–18; *id.* at 26:1–12.) He also said that Ms. Valdes Acevedo would be able to call her family if she was moved and gave Ms. Cardona Valdes a phone number to call to inquire about her mother's whereabouts. (*Id*. 21:1–11; *id.* at 26:6–25.)

For the rest of the day, Ms. Valdes Acevedo's family waited for a call informing them as to whether she would be transferred to 26 Federal Plaza. (Hr'g Tr. 26:1–5.) They also made extensive efforts to determine where she was located and whether she was being moved. Mr. Rios Valdes searched the ICE Online Detainee Locator System using his mother's name and Alien Registration Number ("A-Number") "countless times" between 10:00 am and around 5:00 pm, but each search yielded the result that there were no ICE detainees associated with Ms. Valdes Acevedo's A-Number. (*Id*. 34:4–24.) Ms. Cardona Valdes and other family members gathered at her brother's home to try to find more information about where Ms. Valdes Acevedo was detained. (*Id*. 21:13–18.) They "call[ed] every number possible." (*Id*. 22:13–17.) Ms. Cardona Valdes called the phone number that the ICE supervisory officer provided her numerous times, with the final call at around 6:15 pm. (*Id*. 22:18–22.) Every time she called the number, however, "it would just be silent" and then it would beep. (*Id.* 21:5–8.)

Ms. Valdes Acevedo's family secured counsel for her and met with counsel at around 8:00 pm on January 15, 2026. (Hr'g Tr. 9:13–14.) Based on what Ms. Cardona Valdes and other family members relayed to him, counsel understood that Ms. Valdes Acevedo was detained in the Nassau County Jail and might be moved to 26 Federal Plaza sometime that day. (*Id*. 9:15–

10:4.) Between around 8:30 pm and 9:00 pm, counsel searched ICE's Online Detainee Locator System for Ms. Valdes Acevedo, but the search yielded no information about her. (*Id*. 10:5–17.) Therefore, with the knowledge that Ms. Valdes Acevedo was detained in the Nassau County Jail at around 4:00 pm during a phone call with her daughter and that numerous, subsequent calls and online searches of ICE's Online Detainee Locator System yielded no information whatsoever about Ms. Valdes Acevedo even as late as around 9:00 pm, counsel filed the Petition in the Eastern District of New York at 11:03 pm on January 15, 2026. (ECF No. 1.)

Unbeknownst to any of Ms. Valdes Acevedo's family members or her counsel, ICE booked Ms. Valdes Acevado out of the Nassau County Jail at approximately 5:15 pm. (First Johnson Decl. ¶ 5.) From that time until around 12:30 am to 1:05 am on January 16, 2026, ICE contractors transported Ms. Valdes Acevado by motor vehicle from the Nassau County Jail to the MVPC in Philipsburg, Pennsylvania. (*Id*. at ¶¶ 5–7.) The parties do not dispute that ICE transported Ms. Valdes Acevedo from Nassau County through the District of New Jersey and the Middle District of Pennsylvania, before arriving at the MVPC, which is located in the Western District of Pennsylvania. Johnson attests that he "[was] informed" by unidentified sources that at approximately 10:08 pm, the ICE contractors transporting Ms. Valdes Acevedo stopped for gas somewhere in the vicinity of Mifflinville, Pennsylvania. (*Id.* at ¶ 6.) He attached to his declaration a gas receipt obtained by the ICE contractors. (ECF No. 13-2.)

While being transported between detention facilities, Ms. Valdes Acevedo did not know where she was being taken but was under the impression that she was being taken to 26 Federal Plaza. (Hr'g Tr. 52:21–22.) It is undisputed, however, that she was not taken to that location. (*Id.* 52:16–53:3.) Moreover, at no point during this trip did ICE permit Ms. Valdes Acevedo to call her family or counsel to inform them of her whereabouts. (*Id.* 52:13–17.) Indeed, it is against

11

ICE policy to do so. (*See* Jan. 22 Letter at 2.) After the ICE transportation contractors crossed Manhattan, Ms. Valdez Acevedo had no idea where she was until she arrived at the MVPC in Pennsylvania. (Hr'g Tr. 52:16–53:3.)

Following her arrival at the MVPC, at around 1:18 am on January 16, 2026, Ms. Valdes Acevedo was permitted to call her family and inform them of her location, providing the first notice that she had been transferred out of Nassau County Jail and was located in Pennsylvania. (*Id.* at 52:6–12; *id.* at 37:25–38:6.) The first time that any family member was able to secure any information from ICE about Ms. Valdes Acevedo's whereabouts was at around 6:00 am on Jan. 16, 2026, when Mr. Rios Valdes refreshed the ICE Online Detainee Locator System and learned that his mother was detained at the MVPC. (Hr'g Tr. 35:19–21.) Ms. Valdes Acevedo remains detained in that facility. (Johnson Decl. ¶ 8.)

## DISCUSSION

Respondents argue that the Middle District of Pennsylvania is the only district court that may resolve the Petition because at the time it was filed—11:03 pm on January 15, 2026—Ms. Valdes Acevedo was located somewhere in that district while en route to the MVPC in the Western District of Pennsylvania. (Motion at 1.) Petitioner opposes transfer, arguing that the fact that Ms. Valdes Acevedo may have been driven through Pennsylvania does not determine venue for a variety of reasons, including that Respondents misread the Second Circuit's decision in *Ozturk II*. (ECF No. 14 at 1–2.) According to Petitioner, Respondents' venue theory would permit the government to "legally thwart habeas venue/jurisdiction indefinitely by continually transporting a prisoner without ever stopping long enough at one location . . ." (*Id.* at 2.) Finally, Petitioner argues that Respondents obfuscated Ms. Valdes Acevedo's true location of detention, thereby warranting an exception to the district-of-confinement rule, and that traditional venue

considerations weigh in favor of hearing the Petition in the Eastern District of New York in light

of alleged due process violations in this District, Petitioner's prior conviction in this District, and

her parole into the United States through this District in 2009. (*Id*. at 2–3.)

Respondents' venue theory is legally and factually unsupported for the reasons explained

below. The unusual facts before the Court warrant application of the unknown-custodian

exception to the district-of-confinement rule. As a result, the last known district in which Ms.

Valdes Acevedo was detained prior to the filing of the Petition—the Eastern District of New

York—is the sole judicial district that can hear the Petition.

## I.    Habeas Corpus Jurisdiction – Legal Standards

Claims by persons in ICE detention that "necessarily imply the invalidity of their

confinement and removal" fall "within the 'core' of habeas corpus and thus must be brought in

habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). Such is the case here, where the Petition

seeks Ms. Valdes Acevedo's immediate release. (ECF No. 1 at 5.)[3]

Under the habeas statute, district courts may only grant habeas relief "within their

respective jurisdictions." 28 U.S.C. § 2241(a). There are "two traditional requirements for a

federal court to entertain a habeas petition" that challenges a person's physical confinement: (1)

the petition must "be filed in the district of confinement," and (2) it must "name the petitioner's

---

[3] Although the Petition also seeks a writ of mandamus against Respondents "so that a
determination on [petitioner's] bond and custody application can be made" (Pet. at 15), that relief
too relates to core habeas relief. *See Darboe v. Ahrendt*, 442 F. Supp. 3d 592, 594 (S.D.N.Y.
2020) (holding that a habeas petition seeking a bond hearing "goes directly to [petitioner's]
continued detention" and therefore it "raises a 'core' habeas challenge"); *Singh v. Decker*, No.
20-cv-9089, 2021 WL 23328, at *3 (S.D.N.Y. Jan. 4, 2021) (collecting cases).

immediate custodian." *Ozturk II*, 136 F.4th at 390 (citing *Rumsfeld v Padilla*, 542 U.S. 426, 438 (2004)).

Regarding this first requirement, "[t]he plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement." *Padilla*, 542 U.S. at 443. The district of confinement is the district where a habeas petitioner is physically confined "[a]t the time the petition was filed." *Ozturk II*, 136 F.4th at 391.

With respect to the second requirement—the immediate-custodian rule—a petition must generally name "some person who has the *immediate custody* of the party detained" rather than a remote supervisory official because, "[b]y definition, the immediate custodian and the [detained person] reside in the same district . . . ." *Padilla*, 542 U.S. at 435, 444 (emphasis in original).

However, there are exceptions to these two general requirements. In *Rumsfeld v. Padilla*, the Supreme Court recognized that when a detained person "is held in an undisclosed location by an unknown custodian, it is *impossible* to apply the immediate custodian and district of confinement rules." 542 U.S. at 450 n.18 (citing *Demjanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986) (Bork, J., in chambers) (emphasis added)).[4] Although courts refer to this as the "unknown-custodian exception," it impacts the application of *both* the district-of-confinement and immediate-custodian rules. *See Ozturk II*, 136 F.4th at 392 (recognizing the unknown-custodian exception where the government argued that petitioner's failure to name her immediate custodian was fatal to the petition); *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *4 (4th

---

[4] For example, in *Demjanjuk*, the D.C. Circuit recognized that when a detainee is held in a secret location, their attorneys "cannot be expected to file in the jurisdiction where [the detainee is] held," because it is "impracticable to require the attorneys to file in *every* jurisdiction." 784 F.2d at 1116.

Cir. July 1, 2025) (finding that the unknown-custodian exception "encompasses" an exception to *both* the district-of-confinement and immediate-custodian rules); *Tacuri ex rel. Guanoluisa v. Francis*, No. 25-cv-07012, 2025 WL 3459377, *3–4 (S.D.N.Y. Dec. 2, 2025) (applying the unknown-custodian exception in the district-of-confinement analysis); *Khalil v. Joyce*, 777 F. Supp. 3d 369, at *403–410 (D.N.J.), *motion to certify appeal granted*, 777 F. Supp. 3d 411 (D.N.J. 2025) (applying the unknown-custodian exception to the immediate custodian analysis).

The Fourth Circuit explained why the unknown-custodian exception is relevant not only to the assessment of the proper respondent to a habeas petition (the immediate-custodian rule), but *also* to the determination of venue (the district-of-confinement rule):

> The unknown-custodian exception is critical because a detainee must always have an available forum for a habeas petition, even if the government doesn't disclose their location. As Blackstone put it, 'the king is at all times [e]ntitled to have an account, why the liberty of any of his subjects is restrained, wherever that restraint may be inflicted.'

*Suri*, 2025 WL 1806692 at *5 (citing 3 William Blackstone, *Commentaries* *131). Thus, the unknown-custodian exception to the general rule that a habeas petition must be filed in the district of confinement and name the petitioner's immediate custodian advances the core habeas principle that "there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it." *Id.*; *Guanoluisa*, 2025 WL 3459377, at *3. And "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

Courts have grappled with the complexity of applying the district-of-confinement and immediate-custodian rules to determine the proper venue for a habeas petition when the Government has transferred a detainee to another district. Questions concerning the proper venue and respondent are straightforward when the transfer occurs *after* the filing of a petition. The

Supreme Court has made clear that "when the Government moves a habeas petitioner after [the petitioner] properly files a petition naming her immediate custodian, the District Court [where the petition was filed] retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the [petitioner's] release." *Padilla*, 542 U.S. at 441. However, when the government moves a habeas petitioner *before* the petition is filed, the analysis can become more complex.

For example, in *Ozturk v. Trump* ("*Ozturk I*"), 777 F. Supp. 3d 26 (D. Mass. 2025), a district court in Massachusetts determined that Vermont was the district of confinement where, at the time a habeas petition was filed, ICE was moving the petitioner through Vermont to a detention facility in that state, where she was ultimately detained overnight before being flown to Louisiana. *Id.* at 43. After making that determination, the court ordered the government to transfer the petitioner from Louisiana back to Vermont to aid in resolving the petition. *Id*. In ruling on an application for an emergency stay of the transfer order pending appeal, the Second Circuit concluded that the government failed to show a likelihood of success in its argument that Louisiana was the proper venue. *Ozturk II*, 136 F.4th at 390–394. In *Khalil v. Joyce* ("*Joyce*"), 771 F. Supp. 3d 268, 276, 280 (S.D.N.Y. 2025), the district court found that New Jersey was the district of confinement where the petitioner was removed from the Southern District of New York and booked into a New Jersey detention facility *before* his counsel filed a habeas petition in the Southern District of New York.

Pertinent to the facts before this Court is the court's analysis in *Guanoluisa*, 2025 WL 3459377, at *3. There the district court applied the unknown-custodian exception to the district-of-confinement and immediate-custodian rules where "neither Petitioner's next friend nor anyone else seeking to act on Petitioner's behalf could have known . . . at the time of filing" the

16

habeas petition in the Southern District of New York that the petitioner had been removed from New York, driven to New Jersey, and then flown to Texas. *Id*. at *4. The information about where ICE officials were planning to transport the petitioner was not made available through the ICE Online Detainee Locator System or otherwise. *Id.* Because such information was not available to individuals "exercising reasonably diligent effort at the time that Petitioner's next friend filed the Petition," the unknown-custodian exception applied. *Id*. (citing *Suri v. Trump*, 785 F. Supp. 3d 128, 143–44 (E. D. Va. 2025)). Moreover, "because Petitioner was neither here, nor there, but in the air when his habeas claim was filed . . . he was not physically detained in *any* judicial district at that time," and therefore "no district satisfie[d] the district of confinement rule." *Guanoluisa*, 2025 WL 3459377, at *4 (emphasis added).

## II.    Analysis

Here, as in every habeas case, venue is only proper in a single district: the district of confinement. *Ozturk II*, 136 F. 4th at 391; *Padilla*, 542 U.S. at 443. By all accounts, Ms. Valdes Acevedo was detained in the Nassau County Jail in the Eastern District of New York on January 15, 2026. After an ICE officer suggested that she could be moved to 26 Federal Plaza (in the Southern District of New York), her family repeatedly searched for information about when or where she might be moved through all available avenues—by calling the phone number provided to them and conducting searches of the ICE Online Detainee Locator System "countless" times. (Hr'g Tr. 34:14–23; *id.* at 22:13–15.) Her family retained counsel that day and informed him of their extensive efforts. Counsel conducted an additional search of the ICE Online Detainee Locator System as late as around 9:00 pm, just hours prior to filing the Petition, which yielded no information about Ms. Valdes Acevedo whatsoever. (*Id*. 9:15–10:17.) At no point on January 15, 2025, did ICE provide *any* information to the public or Ms. Valdes Acevedo's counsel or

family about where she was located. At 5:15 pm that day, ICE officials removed Ms. Valdez

Acevedo from the Eastern District of New York without informing her family or counsel,

providing any information about her whereabouts on the ICE Online Detainee Locator System,

or allowing Ms. Valdes Acevedo to call her family to tell them that she was being moved. (First

Johnson Decl. ¶ 5; Hr'g. Tr. 26:1–5; *id.* at 24:4–13; *id.* at 51:23–52:17.)

Accordingly, at the time the Petition was filed, no reasonably diligent attorney (or family

member) could have known that Ms. Valdes Acevedo was being driven somewhere in

Pennsylvania, much less that she was specifically in the Middle District of Pennsylvania at the

moment the Petition was filed. *See Suri*, 785 F. Supp. 3d at 143–44. Moreover, Respondents fail

to support their contention that Ms. Valdez Acevedo was detained in ICE custody specifically in

the Middle District of Pennsylvania at the precise moment the Petition was filed—11:03 pm—

with any admissible evidence, such as a declaration or testimony by a witness with personal

knowledge. Both her location and custodian were unknown at the moment the Petition was filed,

warranting application of the unknown-custodian exception recognized by *Padilla*, 542 U.S. at

450 n.18, and applied by the Second Circuit in the immigration detention context, *Ozturk II*, 136

F.4th at 392–93. Under this rule, the district of confinement and the only district that can resolve

the Petition is the last known place of detention: the Eastern District of New York. *See*

*Guanoluisa*, 2025 WL 3459377, at *4 (applying unknown-custodian exception to the district-of-

confinement rule).

Respondents rely on *Ozturk II*, *Joyce*, and a district court decision from Colorado to

argue for venue in the Middle District of Pennsylvania. None of their arguments are persuasive.

First, neither the Second Circuit in *Ozturk II* nor the district court in *Joyce* confronted a

situation where (1) there are no facts in the record as to where the petitioner *actually was* located

at the time the petition was filed, (2) the government seeks to transfer venue to a district through which the petitioner was transported *at some point* but not detained overnight, *and* (3) where there was no way for counsel to know the petitioner's location or immediate custodian at the time the petition was filed. The Second Circuit in *Ozturk II* observed that the petitioner was transited through Vermont en route to Louisiana. 136 F.4th at 389. However, in *Ozturk I*, the Massachusetts district court concluded that Vermont was the district of confinement based on, among other things, the fact that the petitioner was in transit to a detention facility in Vermont when the petition was filed *and* was ultimately detained overnight in that district. 777 F. Supp. 3d at 43.

Second, contrary to Respondents' contentions, the Second Circuit's decision in *Ozturk II* does not resolve questions about the application of the district-of-confinement rule and the unknown-custodian exception on the facts before this Court. There, the Second Circuit declined to impose an emergency stay of the carefully reasoned order of a district court in Vermont, which required the government to transfer a habeas petitioner from Louisiana back to Vermont. *See Ozturk II*, 136 F.4th at 387–89. Its analysis did not green light a venue rule by which a district through which the government *may* be transporting a petitioner at the moment a habeas petition is filed must be the district of confinement. As Judge Sanket Bulsara of this District recently noted: "Nothing about the [Second Circuit's] blessing the transfer created a rule that venue is lost at the exact moment of a district border crossing." *Flores-Linares, v. Bondi*, No. 26-cv-00298, 2026 WL 179208, *3 (E.D.N.Y. Jan. 22, 2026).

Third, to be clear, Respondents had custody of Ms. Valdes Acevedo during the entire time of her transport from the Nassau County Jail to the MVPC, yet they *simultaneously* fail to provide a declaration or testimony by an individual with personal knowledge of her location at

19

the time the Petition was filed *while also* insisting that her physical location at the precise minute of that filing determines venue. (Jan. 21 Letter at 1 ("[I]n terms of determining which district in Pennsylvania would have jurisdiction over Petitioner's habeas petition, the Court must look to Petitioner's physical location at the time the petition was filed.").) Respondents' declarant estimates that Ms. Valdes Acevedo arrived at the MVPC (located in the Western District of Pennsylvania) some time around 12:30 am to 1:05 am on January 16, 2026. (First Johnson Decl. ¶ 7.) But that does not tell us where Ms. Valdes Acevedo was at 11:03 pm on January 15, 2026, when the Petition was filed. Respondents point to a gas station receipt from 55 minutes *before* the filing of the Petition to argue that Ms. Valdes Acevedo must have been in the Middle District of Pennsylvania at 11:03 pm. (Motion at 1 (citing ECF No. 13-2).) When asked how Respondents could be sure that Ms. Valdes Acevedo was located in that specific district—rather than the Western District of Pennsylvania—at that precise time, Respondents asked the Court to conduct a Google Maps search to estimate the driving time from the gas station location to the MVPC, emphasizing that the MVPC is on the eastern border of the Western District of Pennsylvania. (Hr'g Tr. 48:1–17; *see also* Jan. 21 Letter at 1 (noting that the MVPC is "located on the eastern edge of the Western District of Pennsylvania").) However, Respondents' failure to pinpoint exactly where Ms. Valdez Acevedo was located at that time her Petition was filed undermines their insistence that the district of confinement for a detainee in transit must be what is at best characterized as a district through which the petitioner *may have been* transported at the minute the petition is filed. Indeed, Respondents concede that ICE transported Ms. Valdes Acevedo through numerous jurisdictions on January 15, 2026, potentially including the Southern District of New York, the District of New Jersey, and the Middle District of Pennsylvania, before booking her into a detention facility in the Western District of Pennsylvania. (*See* Motion at 3.)

20

Fourth, due to security protocols, neither the fact of transfer nor the route is disclosed to the public, making it impossible for a petitioner's counsel and family to predict where the petitioner may be located such that they can file a habeas petition in the correct venue in the event that the detained person is in transit at the time a habeas petition is filed. (*See* Jan. 22 Letter at 2.) The facts here are thus comparable to those in *Guanaluisa*, where the court applied the unknown-custodian exception to determine the district of confinement. 2025 WL 3459377, at *4. When questioned about *Guanaluisa*, Respondents did not take the position that the case was wrongly decided. (Hr'g Tr. 48:18–49:7.) Rather, according to Respondents, the unknown-custodian exception would apply when a petition is filed while a detainee is being *flown on a plane* from one jurisdiction to another, but not when a detainee is being *driven in a motor vehicle* from one jurisdiction to another because precise location can be pinpointed when driving, but not when flying. (*Id*.) As a factual matter, that is simply incorrect. GPS and other technology permits pinpointing where the plane flying Guanoluisa was located in the air above a judicial district at the time her petition was filed, just as GPS and other technology permits pinpointing where the motor vehicle transporting Ms. Valdes Acevedo was located at the time her Petition was filed. Although such precise determinations are *possible*, the government apparently does not log such information on a minute-to-minute basis when transporting ICE detainees, whether by plane or motor vehicle—nor does this Court expect them to do so. Yet, Respondents seek a rule where such precision is *required* to identify the sole district of confinement with jurisdiction to hear a habeas petition in the case of a detained person in transit when the petition is filed. Analogous to the situation in *Guanoluisa*, here, Ms. Valdes Acevedo's family did not and could not know that she was being removed from New York and taken to Pennsylvania and thus could not have filed the Petition in *any* district in that state on her behalf. *See Guanoluisa*, 2025 WL 3459377, at *5

(noting similar facts with respect to the Western District of Texas). As in *Guanoluisa*, it is impossible here to identify the precise district in which Ms. Valdes Acevedo was detained at the time the Petition was filed. Therefore, "habeas venue properly lies in the last-known location of detention" in light of the Supreme Court's holding in *Padilla* that there is only one appropriate district in which a habeas petition could be brought. 542 U.S. at 443; *see also Guanoluisa*, 2025 WL 3459377, at *4.

Fifth, Respondents fail to demonstrate how their theory of venue comports with the immediate-custodian rule. According to Respondents, while Ms. Valdes Acevedo was being transported from the Eastern District of New York to the Western District of Pennsylvania, her immediate custodian was the Acting Field Office Director for ICE ERO for whatever location she was in, frequently changing as she moved from Nassau County, through the Southern District of New York, the District of New Jersey, the Middle District of Pennsylvania, and ultimately to the Western District of Pennsylvania. (Hr'g Tr. 59:21–60:7.) This argument crumbles upon deep inquiry. Respondents fail to show that any of these supervisory ICE officials assumed custody over Ms. Valdes Acevedo, much less that they even *knew* that she was passing through their area of responsibility such that they served as her immediate custodian on January 15, 2026. Yet, the proper respondent to a habeas petition is "the person with the ability to produce the prisoner's body before the habeas court." *Padilla*, 542 U.S. at 434–35 (internal quotation marks omitted). Indeed, the Massachusetts district court in *Ozturk I* rejected this exact immediate-custodian theory. It found that there is no "legitimate judicial imprimatur to [such a] freewheeling definition of a custodian" in the face of the petitioner's assertion that the ICE New England Field Office Director based in Massachusetts was Ozturk's immediate custodian while ICE was transporting her through Vermont. *Ozturk I*, 777 F. Supp. 3d at 39 n.2. Similarly here,

Respondents fail to show why the Acting Field Office Director for ICE ERO located in Philadelphia—in the Eastern District of Pennsylvania—was Ms. Valdez Acevedo's immediate custodian as she was driven across the Middle District of Pennsylvania.

Sixth, Respondents rely on an out-of-Circuit case to argue that venue lies in the Middle District of Pennsylvania on the basis that "the 'district of confinement' rule takes precedence over the 'immediate custodian' rule because issues related to the immediate custodian are practically resolved by the court['s] jurisdiction over supervising officials." (Jan. 21 Letter at 2 (quoting *Dvortsin v. Noem*, No. 25-cv-01741, 2025 WL 1751968 (D. Colo. June 12, 2025).) There is no Second Circuit authority establishing such a rule. Moreover, as the facts of this case show, application of the district-of-confinement rule without the unknown-custodian exception does *not* resolve the question of who was Ms. Valdes Acevedo's immediate custodian during her transport, because her precise location at the time the Petition was filed is unknown and Respondents' assertion that the Acting Field Office Director for ICE ERO for Philadelphia was her immediate custodian is unsupported both legally and factually.

Seventh, here, where there is essentially an "unknown" district of confinement, Respondents' venue theory would permit forum shopping by the government, rather than limit forum shopping by either party. Respondents may waive a venue objection because the district-of-confinement rule is not jurisdictional in the sense of a limitation on subject-matter jurisdiction. *Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011). Rather, it is akin to venue. *See Padilla*, 542 U.S. at 451 (Kennedy, J., concurring); *Joyce*, 771 F. Supp. 3d at 287. Respondents have identified no prejudice in litigating the Petition here. However, rather than waive any objection to the filing of the Petition in the Eastern District of New York, Respondents seek to transfer this matter to the Middle District of Pennsylvania based on a

declaration consisting of hearsay statements based on information gleaned from unidentified sources and a gas station receipt from 55 minutes before the filing of the Petition—even though there is no evidence of Ms. Valdes Acevedo's location at the time the Petition was filed, she was never held overnight in the Middle District of Pennsylvania, no warden there assumed custody over her, and there was no reasonable basis for her counsel to have known that ICE may have been driving her through that district when the Petition was filed. Respondents request to transfer venue on these facts suggest forum shopping by Respondents. By contrast, there is no evidence that Ms. Valdes Acevedo's counsel made any effort to forum shop by filing the Petition in this District based on all evidence in the record, including that Ms. Valdez Acevedo was detained in Nassau County even as late as around 4:00 pm on January 15, 2026 and the extensive searches conducted by her family and counsel to determine when and where she could be transferred.

Accordingly, on this record, where neither counsel nor family could have discovered Ms. Valdez Acevedo's location with reasonable diligence due to the government's decision to move her, Ms. Valdez Acevedo's location and custodian at the time the Petition was filed were both unknown. The district of confinement is therefore the last known place of detention: the Eastern District of New York. This conclusion is squarely rooted in the application of the unknown-custodian exception recognized by *Padilla*, 542 U.S. at 450 n.18, and applied by the Second Circuit in *Ozturk II*, 136 F.4th at 392–93. Respondents' request to transfer venue to the Middle District of Pennsylvania is unsupported by the facts and would compel the conclusion that an ICE supervisory official in Philadelphia served as Ms. Valdez Acevedo's immediate custodian

when she was being driven through that district.[5] Such a theory of venue is legally untenable for all of the reasons set forth above.[6]

Moreover, the conclusion that the last known district of detention is the district of confinement based on the specific facts before this Court also respects traditional venue concerns. *Cf. Suri*, 785 F. Supp. 3d at 149 (holding that resorting to traditional venue considerations is appropriate when applying the default rules of habeas jurisdiction become untenable); *Guanoluisa*, 2025 WL 3459377, at *5 (taking into account traditional venue considerations in determining the district of confinement). The Eastern District of New York—where Ms. Valdes Acevedo was paroled into the United States, has a prior criminal case, resides

---

[5] In their post-hearing supplemental letter, Respondents rely on a district court case from Maryland to argue that the unknown-custodian exception does not apply here because Respondents are not forum shopping or seeking to imminently remove Ms. Valdes Acevedo. (Jan. 22 Letter at 2–3 (citing *Mbabid v. Baker*, No. 25-cv-3505, 2025 WL 3211024 (D. Md. Nov. 18, 2025).) As noted above, however, the record suggests that Respondents are forum shopping. The record before the Court, moreover, warrants application of the unknown-custodian exception to the district-of-confinement rule because Ms. Valdez Acevedo was "held in an undisclosed location by an unknown custodian," which rendered "it is *impossible* to apply the immediate custodian and district of confinement rules." *Padilla*, 542 U.S. at 450 n.18.

[6] Moreover, Respondents' proposed rule promises significant delays and inefficiencies because it is impossible for counsel or family to discern the proper venue for a habeas petition for a detained person whom the government decides to move from one location to another—and potentially again and again—until an unspecified amount of time has passed before the government provides information about the petitioner's location. Then, if transfer is required under Respondents' theory, petitioners must wait for one federal district court to another court—a process that adds additional delay despite the best intentions of the transferring court.

Such inefficiencies are contrary to the purpose of habeas, which compels courts to "afford a *swift and imperative* remedy in all cases of illegal restrain upon personal liberty." *Price v. Johnston*, 334 U.S. 266, 283 (1948) (emphasis added). These delays are also unwarranted on the facts presented here, where Ms. Valdes Acevedo was held in an undisclosed location by an unknown custodian at the time the Petition was filed, thereby meriting application of the unknown-custodian exception to the district-of-confinement rule.

with her children and extended family, was being interviewed for an application for status as a lawful permanent resident, was arrested by ICE on January 15, 2026, and was detained until later that same day—has a strong interest in hearing the habeas petition. Moreover, as noted, Respondents have pointed to no prejudice to litigating the matter here.

For all of these reasons, at the time the Petition was filed, the Eastern District of New York was "the one and only district" in which Ms. Valdes Acevedo could have filed her petition when she did. *Joyce*, 771 F. Supp. 3d at 290; *Guanoluisa*, 2025 WL 3459377, at *5.

Finally, Respondents have waived any argument as to whether the Petition is defective in that it names agencies—Nassau County Correctional Center, DHS, and DOJ—rather than a specific custodian or supervisory government officials. Respondents' Motion fails to make any argument regarding the proper respondent in this action and instead focuses solely on the question of venue in light of the district-of-confinement rule. (*See generally* Motion.) Respondents only addressed the issue of the proper respondent in response to the Court's January 20, 2026 Order, which required "a filing identifying who would be the proper respondent to the petition under the immediate-custodian rule as of January 15, 2026 at 11:08 PM." (Elec. Order, Jan. 20, 2026.) In response to the Court's questions at the January 21, 2026 hearing, Respondents made clear that they are not "challenging that the Petition names agencies rather than individuals." (Hr'g Tr. 59:7–12.) Thus, Respondents have waived any objection based on the Petition's failure to name a specific custodian or supervisory government official. *See Skaftouros*, 667 F.3d at 146 n.1; *Gooden v. Gonzales*, 162 F. App'x 28, 29 (2d Cir. 2005).

### III.    Response to the Petition

This Court's January 16, 2026 Order to Show Cause required Respondents to show cause why the Petition should not be granted by January 19, 2026, and scheduled a hearing on the

Order to Show Cause for January 21, 2026. (Elec. Order, Jan. 16, 2026.) In lieu of providing a substantive response to the Petition, on January 18, 2026, Respondents filed the Motion to Transfer and requested the following alternative relief in the event transfer was denied: (1) an extension of time until January 23, 2026 to respond to the Order to Show Cause, (2) sufficient time thereafter for Petitioner to reply, and (3) an adjournment of the January 21, 2026 hearing. (Motion at 4.) Respondents contend that "[d]ue to the age of [Ms. Valdes Acevedo's] file, it is kept in paper form and will require some time for ICE to obtain" and provide copies. (*Id*. at 3.) Ms. Valdes Acevedo's counsel indicated that he could not consent to these extension requests until he had time to meet with this client. (*Id.* at 3–4.)

Because the Motion to Transfer is denied, this Court now considers Respondents' extension and adjournment requests.

First, the Court already adjourned the January 21, 2026 show cause hearing and converted that proceeding to a hearing and argument on the Motion to Transfer. (Elec. Order, Jan. 20, 2026.) Accordingly, one form of requested relief has already been granted.

Second, January 23, 2026—the date on which Respondents sought to file their substantive response to the Order to Show Cause—has passed. It has been nine days since the Petition was filed, and Respondents have had ample time to gather all relevant materials as the Court has considered the question of venue. Accordingly, the request for an extension of time is granted. By **January 24, 2026 at 5:00 pm**, Respondents must show cause why the Petition should not be granted, including by identifying the statutory basis for detaining Ms. Valdes Acevedo, whether 8 U.S.C. §§ 1225(b)(1), 1225(b)(2), 1226(c), and/or some other provision of the Immigration and Nationality Act, and all documents material to their asserted statutory basis for the detention.

Third, the request for an extension of time for Petitioner's reply is granted due to the grant of Respondents' requested extension. Petitioner must submit any reply by **January 26, 2026**.

## CONCLUSION

For the reasons set forth above, this Court has jurisdiction to hear Ms. Valdes Acevedo's Petition, and Respondents' Motion to Transfer (ECF No. 13) is denied.

By **January 24, 2026 at 5:00 pm**, Respondents must file a response to the Order to Show Cause that includes, but is not limited to, information identifying the precise statutory basis for detaining the petitioner and all documents material to their asserted statutory basis for the detention.

Ms. Valdez Acevedo must submit any reply by **January 26, 2026**. The Court will hold a hearing on the Petition on **January 28, 2026** at **10:30 am**.

Dated: Central Islip, New York
      January 24, 2026

                                        */s/ Nusrat J. Choudhury*
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge